**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| NEAL HARRIS, et al., | Case No. 3:19-cv-00341 |
| Plaintiffs, | District Judge Walter H. Rice |
| vs. | Magistrate Judge Sharon L. Ovington |
| GERMAN TOWNSHIP, OHIO, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATIONS[1]**

## I.  Introduction

Plaintiffs Neal Harris and Joy Harris erected a fence on their property in Germantown, Ohio.  They allege that Defendants have gone to extraordinary lengths to force them to remove their fence and, in doing so, have violated their federal constitutional rights and Ohio law.  A few of the many Defendants are German Township, Ohio; German Township's Board of Trustees and the Trustees themselves; and Cheryl K. Watson, a former German Township Zoning Inspector.

Plaintiffs seek leave to amend their Complaint to add as Defendants the German Township Chief of Police, two German Township Police Officers, and the German Township Police Department.  These proposed new Defendants have not opposed or responded to Plaintiffs' Motion for Leave to Amend.  Given this, and because leave to

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

amend a complaint should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiffs' Motion for Leave Amend is well taken as to these proposed new Defendants and the claims Plaintiffs seek to raise against them.

Defendant Watson is the sole opponent to Plaintiffs' Motion for Leave to Amend. She contends that it would be futile for Plaintiffs to amend their Complaint to raise claims against her under Ohio law for malicious prosecution and abuse of process. Plaintiffs disagree and maintain their desire to add these two claims against Defendant Watson.

## II. Applicable Standards

"Although [Rule 15(a)(2)] encourages courts to give leave to amend 'when justice so requires,' courts need not give leave to amend when doing so would be futile." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citation omitted). A proposed amended complaint that cannot survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is futile. *United States ex rel. Ibanez v. Bristol-Myers Squibb Company*, 874 F.3d 905, 917 (6th Cir. 2017). "As a result, the dispositive question ... is whether [the] proposed second amended complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014) (quoting, in part, *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (internal quotation marks omitted)).

Under Rule 12(b)(6), the Court accepts the plaintiffs' allegations as true and construes their complaint in their favor. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th

Cir. 2011).  To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The facts cannot make it merely possible that the defendant is liable; they must make it plausible.  Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**III.    Discussion**

**A.    Malicious Prosecution**

Plaintiffs assert in their proposed Amended Complaint (Count X) that Defendant Watson and others engaged in malicious prosecution by purposefully and maliciously instituting various zoning proceedings against them without probable cause and without any legal justification or excuse.  Plaintiffs point out that those zoning proceedings were ultimately decided in their favor.  (Doc. #18, *PageID* #217).

Plaintiffs also assert an abuse-of-process claim in their proposed Amended Complaint (Count XI).  They allege that Watson and others maliciously instituted various zoning proceedings against them.  They further accuse Watson and others of "intentionally misus[ing] the Township's zoning process to advance their own

3

illegitimate reasons and not in furtherance of an appropriate action warranted by law." *Id*. at 218, ¶146.

Plaintiffs' Proposed Amended Complaint—like their original Complaint—describes in detail many problems that arose over many years in connection with the fence they built on their property. Accepting their factual allegations as true, they have lived through troubled times involving an unneighborly neighbor, a scheming township board of trustees, and vindictive zoning inspectors. One zoning inspector, Defendant Watson, questioned the validity of the zoning variance Plaintiffs had been granted to build their fence in an effort to force Plaintiffs to remove their fence. Once Defendant Watson learned that the variance could not be rescinded, she sent a letter informing Plaintiffs that a portion of their fence constituted a nuisance (Plaintiffs suspect their neighbor had sabotaged their fence). Watson's letter instructed Plaintiffs to repair or replace the nuisance portions of the fence or else German Township may take action to remove the fence. Although Plaintiffs used their best efforts to comply with the Township's nuisance concerns, they were required to appear several times before the Township Trustees to defend against baseless attacks regarding the ongoing nuisance created by their fence. (Doc. #18, *PageID* #s 194-95, ¶s 33-36).

Watson later became frustrated with Plaintiffs' public-records requests, which Plaintiffs allege, "were not well received by the Township." *Id*. at 198, ¶ 42. Watson wrote an email to a Township Trustee stating:

> Joy Harris sent another letter to me …. And apparently mailed it to all the Trustees as well. Frankly, I think she thinks I am her personal secretary

4

> and I resent it. The time I am spending on this is beyond ridiculous. She wants copies of all permits issued back to 1993 for [her neighbor] Mr. Haffner's property ….
>
> We need to shut her down on this as I am very tired of dealing with her problems while all sorts of new things are happening.

*Id*. at 198, ¶s 42-43.

\* \* \*

Defendant Watson argues that Plaintiffs' claim of malicious prosecution fails because "no legal proceedings were instituted against Plaintiff." (Doc. #19, *PageID* #224). They were instead involved in administrative proceedings before the German Township Board of Trustees. *Id*. Defendant Watson further argues that Plaintiff's malicious prosecution claim fails because Plaintiffs were not arrested and their property was not seized.

Ohio common law distinguishes civil from criminal malicious prosecution. A claim of malicious *civil* prosecution under Ohio law consists of four elements: "(1) malicious institution of prior proceedings against the plaintiff by defendant, … (2) lack of probable cause for the filing of the prior lawsuit, … (3) termination of the prior proceedings in plaintiff's favor, and (4) seizure of plaintiff's person or property during the course of the prior proceedings …." *Robb v. Chagrin Lagoons Yacht Club, Inc*., 75 Ohio St.3d 264, 269 (Ohio 1996) (quoting *Crawford v. Euclid Natl. Bank*, 19 Ohio St.3d 135, 139 (1985)).

A claim of malicious *criminal* prosecution in Ohio requires proof of the first three civil elements but not the fourth—a seizure of the plaintiff's person or property. *Id*. The

5

reason for this distinction relates to the plaintiff's harm:

> "The tort of malicious criminal prosecution compensates the plaintiff for the damage done to dignity and reputation caused by false accusation of a crime…. The damage occurs whether the plaintiff is arrested or … haled into court on a summons…."

*Id.* (quoting *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 145-46 (1990)).

Plaintiffs' proposed First Amended Complaint does not identify which type of malicious prosecution claim—civil or criminal—they seek to raise under Ohio common law.[2] *See* Doc. #18, *PageID* #217. Their Reply points out that the zoning proceedings against them carried a potential criminal penalty and, as a result, their claim is for malicious *criminal* prosecution. In support, they rely on a German Township zoning ordinance, Section 304, which characterizes a zoning violation as a misdemeanor and imposes a mandatory fine of not more than $500 per day for those found guilty of committing a zoning violation. *See* Doc. #20, *PageID* #231, n.4.

Plaintiffs' reliance on this zoning ordinance first arises in their Reply Memorandum. Defendant Watson therefore has not had an opportunity to address it. Still, it appears that Plaintiffs have refined their claim to one of malicious *criminal* prosecution. This succeeds in avoiding the problem Defendant Watson identifies because Plaintiffs' claim of malicious *criminal* prosecution does not require a seizure of their persons or property. *See Trussell*, 53 Ohio St.3d at 146.

The sole case Defendant Watson cites, *Griger v. Scholz*, 91 N.E.2d 93, 94 (Ohio

---

[2] Although Plaintiffs bring federal constitutional claims under 42 U.S.C. § 1983, they do not suggest that their malicious-prosecution claim arises under § 1983.

6

App. 1950), does not work to her benefit.  *Griger* pre-dates the Ohio Supreme Court's distinction between civil and criminal malicious prosecution.  *See Trussell*, 53 Ohio St.3d at 145-46.  And *Griger* does not address or consider whether a claim of malicious criminal prosecution may arise in Ohio from a township board of trustees' actions, a board of zoning appeals' action, or other administrative action.

It is unclear whether Plaintiffs also seek leave to Amend their Complaint to add a claim of malicious civil prosecution.  They do not specifically ask for this addition, although they argue that they have alleged sufficient facts to show they suffered a prejudgment deprivation of property—the final element of malicious civil prosecution.  *Robb*, 75 Ohio St.3d at 270 ("[a] cause of action for malicious civil prosecution will lie only in cases where there is a prejudgment seizure of property ….").  This occurred, in Plaintiffs' view, when Defendant Watson presented the Board of Trustees with blatantly false statements that their fence was unsafe and constituted a nuisance.  As a result of Watson's falsehoods, the Board issued Resolution 2017-40, ordering Plaintiffs to remove their fence, without giving them a chance to defend against Watson's false statements.  Plaintiffs further contend, "Of course, this is just one of many examples of Watson and the Township maliciously prosecuting Plaintiff[s] for bogus offenses."  (Doc. #20, *PageID* #232) (citations omitted).

It is premature to delve into the merits of these arguments because Defendant Watson did not specifically challenge these aspects of Plaintiffs' proposed Amended Complaint when she opposed their Motion to Amend.  And again, it is unclear whether

7

Plaintiffs seek to raise a claim of malicious civil prosecution in addition to a claim of malicious criminal prosecution. In the event Plaintiffs want to assert both types of malicious-prosecution claims, they should be given an opportunity to clarify this in their First Amended Complaint.

Accordingly, granting Plaintiffs leave to assert a claim of malicious criminal prosecution against Defendant Watson will not add a futile claim to their Complaint.

**B.  Abuse of Process**

Defendant Watson contends that Plaintiffs' abuse-of-process claim against her fails for lack of a plausible showing on each of its three required elements.

Defendant Watson is correct that an abuse-of-process claim in Ohio consists of three elements: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298 (1994) (footnotes omitted)). "[T]the key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Yaklevich*, 68 Ohio St.3d at 300.

Accepting Plaintiffs' allegations as true, Defendant Watson used the Township's zoning and nuisance-abatement processes to advance her personal goal shutting down Plaintiff Joy Harris, particularly her requests for public records concerning her neighbor's

8

property. Defendant Watson's email, when viewed in Plaintiffs' favor, shows that Watson wanted to shut down Joy Harris because Harris was making Watson's job difficult, time-consuming, and tiring. Watson, moreover, allegedly resented Harris and her requests for public records because she felt Harris was treating her like her (Harris's) personal secretary. Construed in this manner, Watson's email suffices at this stage of the litigation to demonstrate that Watson's resentment led her, together with others, to pervert the Township zoning and nuisance-abatement processes to deprive Plaintiffs of their lawfully erected fence. Watson, moreover, according to Plaintiffs, blatantly lied about Plaintiffs' fence to the Township Board of Trustees, and both she and the Trustees knowingly relied on an Ohio statute that plainly did not apply to Plaintiffs' fence— plainly because the township boards cannot act on a nuisance until a fire department or county building department, not a zoning inspector, finds a structure insecure, unsafe, or structurally defective. Ohio Rev. Code § 505.86(B) ("A board of township trustees, by resolution, may provide for the removal, repair, or securance of buildings or other structures in the township that have been declared insecure, unsafe, or structurally defective *by any fire department under contract with the township or by the county building department* …." (emphasis added)). Watson and the Board took these and other actions, according to the proposed First Amended Complaint, to intimidate Plaintiffs into removing their lawfully erected fence and to accomplish Watson's personal (and resentful) goal of stopping Joy Harris from making further public-records requests and treating Watson like her personal secretary. Such goals are outside the normal

9

parameters of any zoning issues before the Board concerning Plaintiffs' fence.

Defendant Watson argues that Plaintiffs cannot show they suffered damages caused by her actions as zoning inspector because Plaintiffs were allowed to keep their fence in place on their property. This, however, overlooks the legal fees Plaintiffs allege they incurred in opposing Watson's and the Board's actions as well as the emotional distress Watson and the Board allegedly caused Plaintiffs by their abuse of the zoning and nuisance-abatement processes. Plaintiffs' proposed Amended Complaint pleads sufficiently specific factual content to create a reasonable inference, and hence a plausible claim, that Defendant Watson engaged in abuse of process in violation of Ohio common law. *See Iqbal*, 556 U.S. at 678.

Accordingly, granting Plaintiffs leave to assert a claim of abuse of process against Defendant Watson will not add a futile claim to their Complaint.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. #18) be GRANTED; and

2. Plaintiffs be ordered to file their First Amended Complaint within 10 days of any Decision or Order adopting this Report and Recommendation.

July 7, 2020　　　　　　　　　　　　　　　　*s/Sharon L. Ovington*
　　　　　　　　　　　　　　　　　　　　　　Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

10

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).