IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NEAL HARRIS, *et al.*,

        Plaintiffs,

    v.

GERMAN TOWNSHIP, OHIO, *et al.*,

        Defendants.

:

:

:

:

Case No. 3:19-cv-341

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING MOTION FOR PARTIAL
SUMMARY JUDGMENT OF PLAINTIFFS NEAL AND JOY HARRIS
(DOC. #53); SUSTAINING GERMAN TOWNSHIP DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DOC. #55) AND
DEFENDANT CHERYL WATSON'S MOTION FOR SUMMARY
JUDGMENT (DOC. #56) ON 42 U.S.C. §1983 CLAIMS; DECLINING
TO EXERCISE SUPPLEMENTAL JURISDICTION OVER STATE LAW
CLAIMS; JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND
AGAINST PLAINTIFFS; TERMINATION ENTRY

---

Plaintiffs Neal and Joy Harris filed suit against German Township, Ohio, its

Board of Trustees, Trustees Benjamin DeGroat, Jacob Stubbs and Mark Cross,

German Township Zoning Inspector Valorie Hill, the Township Police Department,

Police Chief Joseph Andzik, Officer Steven Marsden and Sergeant Christopher

Birch (the "German Township Defendants"), and former German Township

Zoning Inspector Cheryl Watson.

The claims stem from a dispute involving a fence along Plaintiffs' property

line. The First Amended Complaint includes numerous claims under 42 U.S.C.

§ 1983, and state law claims of civil conspiracy, intentional infliction of emotional distress, malicious criminal prosecution, malicious civil prosecution, abuse of process, and *respondeat superior* liability.

This matter is currently before the Court on three summary judgment motions: (1) Plaintiffs' Motion for Partial Summary Judgment, Doc. #53; (2) the German Township Defendants' Motion for Summary Judgment, Doc. #55; and (3) Defendant Cheryl Watson's Motion for Summary Judgment, Doc. #56.

## I.      Background and Procedural History

The relevant facts in this case are largely undisputed. Plaintiffs Neal and Joy Harris own 13 acres on Little Twin Road in German Township. They own the land on both sides of Little Twin Creek, which runs near the eastern border of their property. Mark Haffner owns six acres of land to the east of their property. His house, which used to be an old hunting cabin, sits approximately six feet from the property line. In 2011, Haffner allegedly began trespassing on the Harris's property to illegally dump gravel, bricks and broken concrete into the creek. The Harrises maintain that this effectively destroyed the eastern bank of the creek.

The Harrises decided to construct an 8-foot privacy fence along the eastern property border. German Township Zoning Resolution Article 39, Section 3909, states that fences located in a front yard shall not exceed 3 ½ feet in height. Because the proposed fence would extend beyond the front of their house, the Harrises sought a variance. In December of 2012, the German Township Board of

Zoning Appeals ("BZA") granted them the requested variance. Construction of the fence took place in the Spring of 2013. Haffner complained to the Township officials because the fence blocked his view of the river and allegedly interfered with his enjoyment of his property. Late in 2013, the Harrises began finding wood planks from the fence in the creek and suspected that Haffner was to blame.

In 2014, the Township hired Defendant Cheryl Watson as its Zoning Inspector. In September of that year, Neal Harris informed Watson that Haffner did not have a fence around his pool as required by the zoning regulations. Watson investigated and advised Haffner that he either had to empty the pool or put a fence around it.

Haffner then confronted Cheryl Watson about the Harris's fence. In March of 2015, when she inspected the fence, she observed chains hanging from portions of it, and noted that some portions of the fence were nailed to trees. The fence was only partially painted and had many protruding nails. In addition, portions of the fence were unstable due to erosion along the creek bank. Watson believed that the BZA had erred in granting a variance. She asked the BZA to revoke the variance, but the BZA told her that it lacked jurisdiction to do so. Her similar requests directed to legal counsel for the Township and to the Township's Board of Trustees were also rebuffed.

Thereafter, on April 28, 2015, Watson informed the Harrises that the fence was a nuisance. She gave them until June 12, 2015, to either repair the fence or

remove it. On June 17, 2015, Watson notified them that the Township would hold a public hearing on July 13, 2015, to determine whether the fence was a nuisance. On June 19, 2015, Joy Harris sent Watson a letter stating that she had taken care of the protruding nails. However, when Watson returned to inspect the fence, she found numerous protruding nails. At the July 13th hearing, Joy Harris promised to remedy this issue. She also agreed to contact the Army Corps of Engineers to shore up the creek bank that was eroding under the fence.

A follow-up hearing was held on August 10, 2015, during which Joy Harris admitted that there were still protruding nails that she could not reach. Following the hearing, the Township Board of Trustees adopted Resolution 2015-47, which declared the Harris's fence to be a public nuisance under Ohio Revised Code § 505.87. The Board gave them 14 days to abate the nuisance or remove the fence.[1] On August 14, 2015, Trustee Jacob Stubbs sent a letter to the Harrises, indicating that if they continued to make progress on repairing the fence, the Board would not enforce Resolution 2015-47.

In September of 2015, the Harrises submitted a public records request to the Township, asking for copies of all permits issued for Haffner's property after 1993. Haffner's residence was only six feet from the property boundary. The Harrises maintained that the Township gave him preferential treatment by

_____

[1] The Board adopted this Resolution even though the Board's legal counsel had advised the Board that § 505.87 was limited to nuisances in the form of noxious weeds, trash, refuse and debris, and therefore did not apply.

4

allowing him to convert the hunting cabin into a residence without requiring a variance excusing the Township's 50-foot rear-yard setback requirement.

Cheryl Watson sent an email to Trustee Stubbs, expressing her displeasure with Joy Harris's public records request and accusing her of harassment. Watson also indicated that she had inquired at the municipal court about what needed to be done to require the removal of certain sections of the Harris's fence that were more than eight feet high.

In 2016, the Army Corps of Engineers granted the Harrises permission to restore the creek bank. As part of the restoration, the Harrises had to remove a portion of the existing fence. In August of 2017, they replaced that portion of the fence with a chain link fence. To deter further damage to the fence, they also installed a security camera on the property line. Haffner complained to the police about the camera.

In July of 2017, before the new fence was even installed, Watson again emailed Stubbs, asking if they should schedule a time for the Fire Chief to inspect the fence "and then declare it insecure, unsafe, structurally defective," so that the Board of Trustees "can, by resolution, provide for the removal of the structure."

On September 1, 2017, Defendant Sergeant Christopher Birch and Defendant Police Chief Joseph Andzik met with Miamisburg Municipal Court Judge Robert Rettich to discuss the fence and the security camera. Judge Rettich asked for a copy of the original variance. Former Township Zoning Inspector Lori

Rohrbach, who was then employed by the police department, told Sergeant Birch that the replacement fence did not need a new permit.

On September 22, 2017, Defendant Officer Steve Marsden inspected the security camera and spoke to Sergeant Birch. Birch then spoke to Haffner. They allegedly concocted a plan whereby Haffner and his granddaughter would walk in view of the camera the following day. Birch would then confiscate the camera and, if he found pictures of the granddaughter on the camera, he would charge the Harrises with voyeurism. Birch was disciplined for this conduct.

In October of 2017, the Board of Trustees determined that the Harrises invalidated their variance when they built the replacement fence. The Board determined that the replacement fence was an unpermitted structure and was not properly installed. Although the Board held meetings to discuss the matter on October 3rd and October 10th, the Harrises did not receive notice of either meeting.

On October 10, 2017, the Board passed Resolution 2017-37, which ordered Plaintiffs to remove the fence. Due to irregularities with the voting procedure, this Resolution was rescinded on October 24, 2017, and replaced with Resolution 2017-40. Resolution 2017-40 states that portions of the originally constructed fence are in a state of disrepair, that it is hazardous because nails are protruding from it, and because neither the fence itself nor the ground on which it is built is properly supported. The Resolution further states that the new portion of the fence is "an unpermitted fence that does not meet the stipulations of the variance

granted in 2012 and was not included in said variance." Doc. #1-6, PageID#40. The Resolution declared the fence to be a nuisance pursuant to Ohio Revised Code § 505.86(B) and ordered its removal within 30 days.

The Harrises learned of this Resolution only after receiving a copy in the mail. Their attorney requested documents related to the Resolution and requested a hearing on the matter. Several months passed and the Township took no action to enforce the Resolution. In the Spring of 2018, Cheryl Watson resigned and Valorie Hill was hired as the new Zoning Inspector. On June 28, 2018, the Board of Trustees rescinded Resolution 2017-40, but did not notify the Harrises that it had done so.

On July 13, 2018, Hill inspected the fence. On December 4, 2018, Hill issued a Notice of Zoning Violation, stating that the 99-foot chain link replacement fence was outside the scope of the 2012 variance and was, therefore, an unpermitted structure. The Harrises received the Notice and appealed to the Board of Zoning Appeals ("BZA"). A hearing was held on May 14, 2019.

The BZA determined that 89 feet of the chain link fence did not violate the zoning regulations because it was simply a repair of the existing fence for which a variance had been granted. However, it determined that 10 feet of the chain link fence was first built outside the period of validity of the granted variance. It was, therefore, new construction which required a separate variance. Following the BZA's decision, the Township took no further action concerning the fence.

On October 23, 2019, the Harrises filed suit against German Township, its

Board of Trustees, Trustees Benjamin DeGroat, Jacob Stubbs and Mark Cross,

Cheryl Watson and Valorie Hill. The First Amended Complaint adds claims

against Chief Joseph Andzik, Officer Steven Marsden, Sergeant Christopher Birch

and the German Township Police Department. The First Amended Complaint

includes the following causes of action:

| | |
|---|---|
| Count I: | 42 U.S.C. § 1983 (Due Process) (against DeGroat, Stubbs, Cross, Watson and Hill) |
| Count II: | 42 U.S.C. § 1983 (municipal liability based on unlawful decision by policymakers) |
| Count III: | 42 U.S.C. § 1983 (municipal liability based on unlawful policy, practice or custom) |
| Count IV: | 42 U.S.C. § 1983 (municipal liability based on ratification) |
| Count V: | 42 U.S.C. § 1983 (municipal liability based on failure to train and supervise township employees) |
| Count VI: | 42 U.S.C. § 1983 (Equal Protection) (against DeGroat, Stubbs, Cross, Watson and Hill) |
| Count VII: | 42 U.S.C. § 1983 (municipal liability based on failure to train and supervise police department employees) |
| Count VIII: | Civil conspiracy |
| Count IX: | Intentional infliction of emotional distress |
| Count X: | Malicious criminal prosecution |
| Count XI: | Malicious civil prosecution |
| Count XII: | Abuse of process |
| Count XIII: | *Respondeat superior* for common law and state constitutional claims |

Plaintiffs have moved for summary judgment on Counts I and II of the First

Amended Complaint, Doc. #53, with respect to alleged due process violations.

The German Township Defendants have moved for summary judgment on all

claims, Doc. #55, and Defendant Cheryl Watson has moved for summary

judgment on all claims brought against her, Doc. #56.

## II.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a

jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe; credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, a court may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991). "The

fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted).


III.    **42 U.S.C. § 1983 Claims (Counts I through VII)**

Counts I through VII of the First Amended Complaint seek relief under 42 U.S.C. § 1983 for alleged violations of Plaintiffs' constitutional rights.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). To recover damages under § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated a right secured by the Constitution or laws of the United States. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Here, it appears to be undisputed that Defendants, at all relevant times, were acting under color of state law.  At issue is whether they violated a right secured by the Constitution or laws of the United States.  Plaintiffs have alleged violations of their substantive and procedural due process rights and their equal protection rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

11

Defendants DeGroat, Stubbs, Cross, Watson and Hill are sued in their official and individual capacities. A claim brought against a government official in his or her official capacity is the equivalent of a claim brought against the governmental entity of which the official is an agent. A claim brought against a government official in his or her individual capacity, however, seeks to impose personal liability for alleged constitutional violations. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

### A.    Statute of Limitations

State law governs the statute of limitations applicable to a § 1983 action. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Ohio, § 1983 claims are governed by the two-year statute of limitations for bodily injury actions. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc) (citing Ohio Rev. Code § 2305.10). Such claims accrue when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007).

Plaintiffs filed their Complaint on October 23, 2019. Accordingly, only those § 1983 claims that accrued after October 23, 2017, are actionable. As Defendants note, much of the alleged wrongdoing took place long before that. Defendants ask the Court to exclude from consideration any conduct occurring prior to October 23, 2017, including all claims arising out of the passage of Resolution 2015-47, which first declared the fence to be a nuisance.

Citing *Hensley v. Columbus*, 557 F.3d 693 (6th Cir. 2009), Plaintiffs ask the Court to apply the "continuing violation" doctrine to toll the statute of limitations on their constitutional claims.  A continuing violation exists if: "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had defendants at any time ceased their wrongful conduct, further injury would have been avoided."  *Id.* at 697.

The continuing violation doctrine, however, is narrowly applied.  In the Sixth Circuit, it is generally limited to Title VII cases and comes into play only when there is "some evidence of present discriminatory activity," such as ongoing unequal pay for equal work, or when there "has occurred a longstanding and demonstrable policy of discrimination."  *LRL Props. v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1105-06 (6th Cir. 1995) (internal quotations omitted).  The Sixth Circuit has rarely extended the doctrine to § 1983 actions.  *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (citing *LRL Props.,* 55 F.3d at 1106 n.3).  Even in *Hensley*, the § 1983 case cited by Plaintiffs, the court refused to apply the continuing violation doctrine to that set of facts.  557 F.3d at 697-98.

Assuming *arguendo* that the continuing violation doctrine were available in § 1983 cases, it would not apply here.  There is no evidence of "present discriminatory activity."  Rather, it is undisputed that the Township Defendants have taken no action since December of 2018 to force Plaintiffs to remove or repair the fence.  Moreover, rather than alleging a continuing "over-arching policy of discrimination," *LRL Props.,* 55 F.3d at 1106, Plaintiffs allege that "from 2015 to

13

2018, the Township—through its elected officials and employees—committed a series of *separate unlawful acts* to invalidate and revoke the variance given to Neal and Joy in 2012." Doc. #60, PageID#1998 (emphasis added).

Each separate act described in the Amended Complaint would have put Plaintiffs on notice of the alleged constitutional violation, thereby triggering the two-year statute of limitations for that particular act. Under the circumstances presented here, the Court finds that the continuing violation doctrine does not apply. Accordingly, the Court will not consider any alleged wrongdoing that occurred prior to October 23, 2017.

This significantly narrows the scope of Plaintiffs' § 1983 claims. The only conduct that remains at issue is: (1) the Township's October 24, 2017, passage of Resolution 2017-40 (which was later rescinded); and (2) Hill's issuance of the December 4, 2018, Notice of Zoning Violation (which was later significantly modified by the BZA).

### B.   Claims Against Individual Defendants (Counts I and VI)

With respect to the § 1983 claims brought against them in their individual capacities (in Counts I and VI of the First Amended Complaint), Defendants DeGroat, Stubbs, Cross, Hill and Watson invoke the doctrine of qualified immunity. As the Sixth Circuit has explained:

> The doctrine of qualified immunity generally shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,

14

73 L.Ed.2d 396 (1982). "Qualified immunity 'gives ample room for mistaken judgments [and protects] all but the plainly incompetent or those who knowingly violate the law.'" *Essex v. Cty. of Livingston*, 518 F. App'x 351, 356 (6th Cir. 2013) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019). Qualified immunity

applies "regardless of whether the government official's error is a mistake of law,

a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).

When defendants raise the defense of qualified immunity, plaintiffs bear the

burden of showing that defendants are not entitled to it. *Johnson v. Moseley*, 790

F.3d 649, 653 (6th Cir. 2015). In determining whether a defendant is entitled to

qualified immunity, the court follows a two-step inquiry.

> "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Seales v. City of Detroit, Mich.*, 724 F. App'x 356, 359 (6th Cir. 2018) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). This Court may address these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). "If either prong is not met, then the government officer is entitled to qualified immunity." *Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018) (citing *Courtright*, 839 F.3d at 518).

*Cahoo*, 912 F.3d at 897-98.

Here, the Court turns first to the question of whether the facts, taken in the

light most favorable to Plaintiffs, show that Defendants' conduct violated a

constitutional right, namely the guarantees of due process or equal protection.

Because the Court concludes that, based on the evidence presented, no

15

reasonable jury could find that any individual defendant violated Plaintiffs'

constitutional rights, Defendants are entitled to qualified immunity on the claims

brought against them in their individual capacities.  The Court need not, and does

not, address the question of whether those rights were clearly established.

### 1.    Due Process Claims (Count I)

The Fourteenth Amendment to the United States Constitution provides that

no State shall "deprive any person of life, liberty, or property, without due process

of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause has both

procedural and substantive components.  "Procedural due process is traditionally

viewed as the requirement that the government provide a 'fair procedure' when

depriving someone of life, liberty, or property; substantive due process 'protects

individual liberty against certain government actions regardless of the fairness of

the procedures used to implement them.'"  *EJS Props., LLC v. City of Toledo*, 698

F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503 U.S.

115, 125 (1992)).[2]  In *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992),

the court held that "citizens have a substantive due process right not to be

subjected to arbitrary or irrational zoning decisions."  *Id.* at 1217.

_____

[2]  For example, substantive due process rights may be violated when government action impinges on a fundamental right or "shocks the conscience."  Government action may shock the conscience, in a constitutional sense, when it is "arbitrary or capricious."  *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216–17 (6th Cir. 1992).  *See also Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (explaining that the "arbitrary and capricious" standard is simply another formulation of the "shocks the conscience" standard).

Here, in Count I of the First Amended Complaint, Plaintiffs have alleged violations of their substantive and procedural due process rights. As previously discussed, however, the two-year statute of limitations severely limits the scope of Plaintiffs' claims. With respect to the claims that are not time-barred, Plaintiffs allege that Defendants DeGroat, Stubbs, Cross, Watson and Hill violated their substantive due process rights by adopting illegal enforcement actions (the Notice of Zoning Violation) and resolutions (Resolution 2017-40) that lacked any legitimate legal and legislative purpose. Plaintiffs also allege that Defendants violated their procedural due process rights by arbitrarily depriving them of a protected property interest without appropriate notice and the opportunity to be heard.

The German Township Defendants and Cheryl Watson have moved for summary judgment on the due process claims. Plaintiffs have also moved for summary judgment on these claims. For the reasons set forth below, as to Count I of the First Amended Complaint, the Court sustains Defendants' motions for summary judgment and overrules Plaintiffs' motion for summary judgment.

To succeed on either their substantive or procedural due process claim, Plaintiffs must first prove that they have a constitutionally-protected property or liberty interest, and that they were deprived of that interest. *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (setting forth elements of substantive and procedural due process claims).

Plaintiffs maintain that they have a constitutionally-protected property interest in using and enjoying their land in accordance with the zoning variance granted by the Township in 2012. The Court agrees. *See, e.g., EJS Props.*, 698 F.3d at 856 (holding that property owners have a property interest "in a discretionary benefit, such as a re-zoning ordinance, after it is conferred."); *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 470 (6th Cir. 2008) (holding that a property owner has a protected property interest in a building permit after it is issued).

That variance allowed Plaintiffs to build an 8-foot privacy fence along a certain portion of their eastern property boundary. However, it did not insulate them from all enforcement actions. In fact, the Zoning Certificate issued in 2012 specifically states that "[t]he issuance of this Permit does not allow the violation of German Township Zoning Resolutions or other governing Regulations." Doc. #1-2, PageID#32. Accordingly, to the extent that the fence posed a safety hazard, the variance did not necessarily prohibit Defendants from ordering its removal.

Moreover, that variance, which expired six months after it was issued, did not give Plaintiffs blanket permission, years later, to extend the length of the original fence. The Board of Zoning Appeals ("BZA") found that when Plaintiffs rebuilt a portion of the fence in conjunction with the creek bed repair, they extended the fence an additional 10 feet. Plaintiffs have presented no evidence to the contrary. The BZA determined that this 10-foot extension was outside the scope of the 2012 variance. As such, although the Court finds that Plaintiffs have

18

a protected property interest in the variance granted in 2012, they do not have a protected property interest in the 10-foot extension of the fence.

The next question is whether Plaintiffs were deprived of their protected property interest in the 2012 variance, either by the passage of Resolution 2017-40, or by the December 2018, Notice of Zoning Violation. Based on the evidence presented, no reasonable jury could find that any such deprivation has taken place.

Resolution 2017-40 ordered the removal of the fence within 30 days. Nevertheless, after Plaintiffs requested a formal hearing, the Township took no action to enforce that Resolution and, in June of 2018, the Township rescinded the Resolution. Under these circumstances, it cannot be said that Plaintiffs were deprived of any protected property interest by the passage of Resolution 2017-40.

The December 2018, Notice of Zoning Violation acknowledges that the original 71-foot-long, 8-foot wooden privacy fence that was built pursuant to the 2012 variance complies with Zoning Resolution Article 39 Section 3909. However, according to Zoning Inspector Valorie Hill, the 99-foot-long, 8-foot chain link fence that was first constructed in 2016 is outside the scope of the 2012 variance and is therefore in violation of the Zoning Resolution. Doc. #1-9, PageID#52. The Notice gave the Harrises 30 days to correct the violation.

Again, however, Plaintiffs cannot show that this Notice led to the deprivation of a protected property interest in the 2012 variance. Plaintiffs immediately appealed the Notice of Zoning Violation and requested a hearing by

19

the Board of Zoning Appeals (BZA"). It is undisputed that, during the pendency of that appeal, the entire chain link fence remained in place and the Township took no further action against Plaintiffs.

On appeal, the BZA agreed with Plaintiffs that 89 feet of the 99-foot chain link fence was simply a "repair" of the existing fence and, given that this portion of the fence fell within the scope of the 2012 variance, it did not violate Article 39, Section 3909, of the German Township Zoning Resolution. The Township has taken no further action to require Plaintiffs to remove or repair any of the 89-foot portion of chain link fence in which Plaintiffs have a protected property interest.[3]

The Court finds that, under the circumstances presented here, no reasonable jury could find that Plaintiffs were actually deprived of their protected property interest in being able to use their property in accordance with the variance granted to them in 2012. *See, e.g., Klein v. Donatucci*, 861 F. App'x 503, 508 (3d Cir. 2021) (holding that where government official unsuccessfully attempted to seize control of protected property interest, plaintiff could not show that she suffered an actual deprivation as required to succeed on due process claim).

_____

[3] As previously discussed, Plaintiffs have no protected property interest in the additional 10 feet of chain link fence which was first built outside the period of validity of the 2012 variance. The BZA found this addition to be "new construction" and determined that a separate variance was required. Doc. #1-11, PageID#58. Even as to this new section of fence, the Township has taken no further action to require Plaintiffs to remove or repair it.

Given that Plaintiffs have failed to present sufficient evidence of the deprivation of a constitutionally-protected property interest, the Court need not consider the remaining elements of their substantive or procedural due process claims. *See Am. Exp. Travel Related Servs. Co., Inc. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011) ("a plaintiff must demonstrate a deprivation of a constitutionally protected liberty or property interest in order to establish a due process violation based on discretionary conduct of government officials."); *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) ("Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process."). Nevertheless, for the sake of completeness, the Court will briefly address the other elements of both claims.

The Court turns first to the substantive due process claim. Substantive due process does not "offer recourse for every wrongful action taken by the government." *EJS Props.,* 698 F.3d at 862. "A citizen does not suffer a constitutional deprivation every time he is subject to the petty harassment of a state agent." *Id.* (quoting *Vasquez v. City of Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985)). As the Sixth Circuit noted in *Pearson*, it is "extremely rare" for a federal court to find a substantive due process violation in the context of an administrative zoning action. "The vast majority of such attacks may readily be disposed of on summary judgment." *Pearson*, 961 F.2d at 1222.

To prevail on their substantive due process claim, Plaintiffs must prove that they were deprived of a constitutionally protected property interest by arbitrary and capricious action. Federal court review is limited to determining whether Defendants "paid attention to the evidence adduced and acted rationally upon it." The administrative action cannot be set aside as arbitrary and capricious if there is "some factual basis" for it. *Id.* Plaintiffs must prove that there is "no rational basis" for the decision. *Johnson v. Morales*, 946 F.3d 911, 937 (6th Cir. 2020).

With these standards in mind, the Court concludes that no reasonable jury could find that Defendants' conduct was arbitrary and capricious. The Board of Trustees enacted Resolution 2017-40 after finding that the fence was unsafe. Plaintiffs readily admit that the fence still had protruding nails. In addition, the fence itself and the ground on which it was built were not properly supported, rendering it hazardous to those in the vicinity. The Sixth Circuit has held that safety is a legitimate governmental interest. *Shoemaker v. City of Howell*, 795 F.3d 553, 567 (6th Cir. 2015) (collecting cases). Given that the Board's passage of Resolution 2017-40 is rationally related to a legitimate governmental interest, it cannot be deemed arbitrary and capricious in the constitutional sense.

Plaintiffs' arguments to the contrary are misplaced. They argue that the Board improperly relied on Ohio Revised Code §505.86(B) as the source of its authority to enact Resolution 2017-40. That statute allows a township board of trustees to order the removal or repair of a structure that has been declared "insecure, unsafe, or structurally defective" by the fire department or building

22

department.[4]  It is undisputed that no such determination was made in this case.

Rather, it was the Zoning Inspector who found the fence to be unsafe.

Defendants argue, however, that Resolution 2017-40 nevertheless complied

with the spirit of the law.  Moreover, the fact that the Board of Trustees may have

violated state law in enacting Resolution 2017-40 does not, in and of itself, give

rise to a substantive due process claim, even if the Board acted in bad faith.  *See*

*Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992)

("A bad-faith violation of state law remains only a violation of state law."); *WMX*

*Techs., Inc. v. Gasconade Cty., Mo.*, 105 F.3d 1195, 1200 (8th Cir. 1997) ("A

violation of state law . . . does not amount to the kind of 'truly irrational'

governmental action which gives rise to a substantive due process claim."); 

*Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 594 (3d Cir.

1998) (holding that, even if the City exceeded its authority, the error "is only one

of law, and such an error is not sufficient in itself to establish a substantive due

process claim.").

This same reasoning also defeats Plaintiffs' argument that, in enacting

Resolution 2017-40, the Board unlawfully considered the replacement fence to be

an "unpermitted structure" when, in fact, no additional permit was required.  *See*

*Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir. 1999) ("Arbitrary conduct

that might violate zoning regulations as a matter of state law is not sufficient to

---

[4]  Plaintiffs also deny that the fence constitutes a "structure" as that term is used in § 505.86(B), but cite no authority for this proposition.

23

demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause.").

The Court finds that, even if Plaintiffs could somehow show that they were deprived of a constitutionally-protected property interest, they cannot show that Defendants' conduct was arbitrary and capricious. Because the Board's passage of Resolution 2017-40 is rationally related to a legitimate governmental interest, *i.e.,* safety, it cannot be deemed arbitrary and capricious in the constitutional sense. For this reason also, Defendants are entitled to summary judgment on Plaintiffs' substantive due process claim.

Likewise, assuming *arguendo* that Plaintiffs were somehow deprived of a protected property interest, they cannot satisfy the remaining element of their procedural due process claim. To succeed on their procedural due process claim, Plaintiffs must establish not only that they were deprived of a constitutionally-protected property interest, but also that the Township did not afford them adequate procedural protections. *Cahoo*, 912 F.3d at 900.

The procedural due process clause requires that, when a significant property interest is at stake, "the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation omitted). Typically, this requires that notice and an opportunity to be heard must occur before the deprivation takes place. *Warren v. City of Athens*, 411 F.3d 697, 709 (6th Cir. 2005). However,

the Sixth Circuit has also held that, in deciding how much process is due, "pre- and post-deprivation processes should be considered together as a single package." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015). [5]

In the context of zoning cases, the procedures that are due are "not extensive." *Hart v. City of Ecorse*, No. 05-71061, 2006 WL 8431924, at *4 (E.D. Mich. June 20, 2006), *aff'd sub nom. Mator v. City of Ecorse*, 301 F. App'x 476 (6th Cir. 2008). The Sixth Circuit has repeatedly held that plaintiffs were afforded "complete procedural due process" when they were notified of their right to appeal a zoning decision to the board of zoning appeals. *See Sinclair v. City of Ecorse*, 366 F. App'x 579, 583 (6th Cir. 2010); *Dubuc v. Twp. of Green Oak*, 406 F. App'x 983, 989 (6th Cir. 2011).

Here, Plaintiffs were given reasonable notice and an opportunity to be heard at a meaningful time. They cite no authority for their argument that they had a right to notice and an opportunity to be heard *prior* to the enactment of Resolution 2017-40.[6] It is undisputed that Plaintiffs received a copy of Resolution

---

[5] Factors to be considered in determining what process is owed include: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

[6] Notably, before Resolution 2017-40 was passed, the Harrises had already participated in several evidentiary hearings involving the condition of the fence and were fully aware that the Township considered the fence to be a safety hazard.

2017-40 after it was passed. That Resolution gave them 20 days to request a hearing concerning the matter. Plaintiffs did so, and requested that the hearing be continued until Defendants produced numerous public records related to the Resolution. The Board then rescinded the Resolution before any hearing was held. It is undisputed that, in the interim, the Board took no action to enforce the Resolution. Under these circumstances, with respect to Resolution 2017-40, it cannot be said that Plaintiffs were deprived of a protected property interest without adequate procedural protections.[7]

Likewise, it is undisputed that Plaintiffs received the Notice of Zoning Violation issued in December of 2018, and timely challenged that administrative decision by filing an appeal with the Board of Zoning Appeals. A hearing was held in May of 2019, during which Plaintiffs were given an ample opportunity to make their position known.[8] The fact that Plaintiffs won that appeal, in large part, speaks to the adequacy of the procedural protections that were available to them. Again, Defendants took no action to force Plaintiffs to remove the fence during the

_____

[7] Again, even though the Board may have lacked authority to order removal of the fence absent a determination, by the fire department, that the fence was an unsafe structure, this violation of state law does not automatically constitute a procedural due process violation. *See DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) (holding that a violation of state law does not "automatically translate into a deprivation of procedural due process under the United States Constitution."); *Shoemaker*, 795 F.3d at 560 (same).

[8] Plaintiffs complain that it was unreasonable that they had to wait five months for the hearing to take place. However, that delay was caused by illness and there is no evidence that Plaintiffs were in any way prejudiced by the delay.

pendency of that appeal, and have taken no further action since then. Therefore, no reasonable jury could find that Plaintiffs were deprived of a protected property interest without adequate procedural protections. In this context, Plaintiffs were given all the process that they were owed. *See Sinclair*, 366 F. App'x at 583; *Dubuc*, 406 F. App'x at 989.

For the reasons set forth above, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims alleging substantive and procedural due process violations. Accordingly, the Court sustains Defendants' motion for summary judgment on Count I of the First Amended Complaint and DISMISSES that Count WITH PREJUDICE. The Court overrules Plaintiffs' motion for partial summary judgment on Count I.

### 2. Equal Protection Claim (Count VI)

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any person the equal protection of the laws. U.S. Const. amend. XIV, § 1. States cannot make distinctions that "burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curium)).

Count I of the First Amended Complaint generally alleges that Defendants violated Plaintiffs' rights to due process and equal protection of the law. The Equal Protection claim itself, however, is fully fleshed out in Count VI. It alleges

that Defendants DeGroat, Stubbs, Cross, Watson and Hill, acting under color of

state law, engaged in conduct intended to deny Plaintiffs equal protection of the

law, and treated them differently than similarly situated residents of German

Township. Plaintiffs allege that Defendants selectively enforced the laws of the

State of Ohio and the Township's zoning regulations, that they acted in an

irrational and arbitrary manner, and that their animus toward Plaintiffs, their

extraordinary efforts to force Plaintiffs to remove their fence, and their purposeful

discrimination against them violated Plaintiffs' equal protection rights.

To succeed on their "class of one" claim, Plaintiffs must show that they

were "intentionally treated differently from others similarly situated" and that

"there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

The German Township Defendants and Cheryl Watson have moved for summary

judgment on this claim.

Plaintiffs maintain that they are similarly situated to their neighbor, Mark

Haffner, and that they were intentionally treated differently with no rational basis

for the difference in treatment with respect to: (1) the need to obtain variances;

and (2) the enforcement of the Township's zoning regulations.

A German Township Zoning Resolution prohibited front yard fences that

were more than 3 ½ feet tall. In 2012, the Township therefore required Plaintiffs to

get a variance to build an 8-foot fence in their front yard. Another Township

Resolution required residences to be set back at least 50 feet from the property

line. Plaintiffs note, however, that when Haffner converted the hunting cabin into

28

a residence, the Township did not require him to get a variance, even though the cabin was located just 6 feet from their property line. Given that Plaintiffs were aware of this alleged difference in treatment no later than September of 2015, when they obtained the public records related to Haffner's residence, this particular portion of the claim is time-barred.

However, to the extent that Plaintiffs argue that the Township selectively enforced its zoning code, this portion of the claim is not necessarily time-barred. Plaintiffs argue that, after they brought Haffner's violation of the setback rule to the attention of Township officials in 2015, the Township took no action to enforce the setback rule. In contrast, in 2017 and 2018, the Township instituted enforcement actions against Plaintiffs concerning their fence, through the passage of Resolution 2017-40 and the Notice of Zoning Violation.

Defendants argue that this claim fails on the merits because Plaintiffs cannot show that they are similarly situated to Haffner. In assessing whether others are similarly situated, "courts should not demand exact correlation, but instead seek relevant similarity." *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000).

The Court agrees that Plaintiffs cannot show relevant similarity. As Cheryl Watson explained to Plaintiffs, Haffner's residence was originally built as storage shed. As such, at that time, it was not subject to the 50-foot setback requirement. Instead, the setback for a storage shed is only six feet. The Township later granted a permit (akin to the variance granted to Plaintiffs), which allowed the

29

shed to be converted into a single-family residence. Doc. #52-10, PageID#1835.
Moreover, the rear-yard setback requirement does not implicate any safety issues.
In contrast, the enforcement actions taken against Plaintiffs in 2017 and 2018
stemmed, at least in part, from the fact that portions of the fence had protruding
nails and were not properly secured. For this reason, the Court finds that Plaintiffs
were not similarly situated to Haffner.

Neither can Plaintiffs establish a lack of a rational basis for the difference in
treatment. To do so, they must either negate "every conceivable basis which
might support the government action" or demonstrate that "the challenged
government action was motivated by animus or ill-will." *Warren*, 411 F.3d at 711.
Here, Plaintiffs claim that Defendants acted with malice and ill will. In support,
they cite only to Watson's September 17, 2015, email to Trustee Stubbs
expressing her frustration with Joy Harris's repeated requests for public records
related to Haffner's property, and her displeasure with the fact that certain
sections of the fence were higher than previously-granted variance allowed.
Watson told Stubbs, "We need to shut her down on this."

However, to succeed on this theory, Plaintiffs must prove that the
Township's actions "were motivated by personal malice *unrelated* to the
defendant's official duties." *Sanders v. City of Hodgenville,* 323 F. Supp. 3d 904,
913 (W.D. Ky. 2018) (quoting *Klimak v. Kent Cty. Sheriff's Dep't*, 91 F. App'x 396,
401 (6th Cir. 2004)). In other words, the defendant "must have some pre-existing
bias or motive to retaliate against the plaintiff." *Id.*

30

It is undisputed that Watson did not know Plaintiffs prior to her interactions with them in her role as the Township Zoning Inspector. Any ill will that existed between them arose in the context of that relationship. As such, Plaintiffs cannot prove that Watson acted out of personal malice unrelated to her official duties.

In short, based on the evidence presented, no reasonable jury could find that Plaintiffs were similarly situated to Mark Haffner. Nor could a reasonable jury find that there was no rational basis for the difference in treatment. Accordingly, Defendants are entitled to summary judgment on the Equal Protection claim. The Court therefore DISMISSES Count VI of the First Amended Complaint WITH PREJUDICE.

### C. *Monell* Liability

In Counts II, III, IV, V and VII of the First Amended Complaint, Plaintiffs seek to impose liability for the alleged constitutional violations on German Township. A governmental entity cannot be held liable under § 1983 merely because it employs an individual who engages in unconstitutional conduct. Rather, a plaintiff must prove that a policy or custom of the governmental entity was the "moving force" behind the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Such a policy or custom may consist of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal

31

rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Plaintiffs seek to impose municipal liability under several of these theories. Nevertheless, absent a showing of constitutional injury, a municipality cannot be liable for damages, regardless of the existence of a policy or custom. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Given the Court's finding that none of the individual defendants violated Plaintiffs' constitutional rights to substantive or procedural due process or to equal protection of the law, there is no legal basis for imposing § 1983 liability on German Township.[9]

Accordingly, Counts II, III, IV, V and VII of the First Amended Complaint are DISMISSED WITH PREJUDICE.

## IV. Common Law Claims (Counts VIII through XIII)

In Counts VIII through XIII, Plaintiffs assert a variety of state law claims, including civil conspiracy, intentional infliction of emotional distress, malicious criminal prosecution, malicious civil prosecution, abuse of process, and *respondeat superior* liability.

Because the Court has dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over these state law claims. *See United Mine*

---

[9] Likewise, to the extent that DeGroat, Stubbs, Cross, Hill and Watson were also sued in their official capacities, there is no legal basis for imposing § 1983 liability on them.

*Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if federal claims are dismissed before trial, the state claims should be dismissed as well); 28 U.S.C. §1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction).

Accordingly, Counts VIII through XIII are DISMISSED WITHOUT PREJUDICE to refiling in a state court of competent jurisdiction.

## V. Conclusion

For the reasons set forth above, the Court OVERRULES Plaintiffs' Motion for Partial Summary Judgment, Doc. #53.

The Court SUSTAINS the German Township Defendants' Motion for Summary Judgment, Doc. #55, and Defendant Cheryl Watson's Motion for Summary Judgment, Doc. #56, with respect to all claims brought under 42 U.S.C. § 1983. Said claims, as set forth in Counts I through VII of the First Amended Complaint, are DISMISSED WITH PREJUDICE.

The Court declines to exercise supplemental jurisdiction over the state law claims. Accordingly, Counts VIII through XIII of the First Amended Complaint are DISMISSED WITHOUT PREJUDICE.

Judgment shall be entered in favor of Defendants and against Plaintiffs.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: March 23, 2022

WALTER H. RICE
UNITED STATES DISTRICT JUDGE